

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WILLIAM L. GRAHAM,

          **Plaintiff,**

    **v.**                                    **ACTION NO. 2:08cv279**

COUNTY OF GLOUCESTER, VIRGINIA,
SHERIFF E.S. GENTRY,
MAJOR DOSS,
CAPTAIN PROCTOR,
LT. HOGG,
SERGEANT BURGESS, and
DEPUTY GAGNE,

          **Defendants.**

<u>OPINION AND FINAL ORDER</u>

Plaintiff, a Virginia inmate, filed this pro se action pursuant to 42 U.S.C. § 1983 to redress alleged violations of his constitutional rights. Specifically, Plaintiff complains about the conditions of his confinement at Gloucester County Jail between June 8, 2006, and August 10, 2006.[1] He further claims that he was not adequately protected while incarcerated, resulting in an

---

[1] Plaintiff's Complaint was processed by the court and marked filed on June 16, 2008. A prisoner's complaint is, however, considered filed when it is delivered to prison officials for forwarding to the court. <u>Houston v. Lack</u>, 487 U.S. 266 (1988); <u>Lewis v. Richmond City Police Dep't</u>, 947 F.2d 733 (4th Cir. 1991). Plaintiff signed the Complaint on June 4, 2008, and it was post-marked June 5, 2008. Thus, although filed immediately prior to the running of the two-year statute of limitations period, Plaintiff's Complaint was filed within the limitations period.

assault upon him by other inmates on July 10, 2006. Plaintiff also claims he received inadequate medical care after the assault. Plaintiff seeks monetary damages in an unspecified amount.

After Plaintiff qualified to proceed *in forma pauperis*, Defendants filed a Motion for Summary Judgment and a memorandum and affidavits in support thereof. In accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Plaintiff was given an opportunity to respond to Defendants' motion with any material that he wished to offer in rebuttal. The court also instructed Plaintiff that failure to submit any materials could result in an adverse judgment based on Defendants' motion and accompanying affidavits. Plaintiff responded with briefs and supporting materials. The Court held a hearing on the summary judgment motion on April 24, 2009, and then requested additional briefing based upon the arguments asserted and facts developed at the hearing. The parties have submitted post-hearing briefs, and the summary judgment motion is now ripe for decision.

## I.  <u>Standard of Review</u>

Summary judgment is appropriate only when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Celotex Corp.</u>

2

v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).    The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law.    Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25.    When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial.    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19.    Such facts must be presented in the form of exhibits and sworn affidavits.    Celotex Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993).

On summary judgment, the court is not to "weigh the evidence and determine the truth of the matter[.]" Anderson, 477 U.S. at 249.    Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.    Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).    But a failure by a plaintiff to rebut

3

a defendant's motion with sufficient evidence will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## II.  Facts

The following facts are undisputed unless otherwise noted. Plaintiff was incarcerated on June 8, 2006, at Gloucester County Jail ("Jail"). He was formerly a correctional officer at an adjacent facility and a fire department official. The Jail has a policy of placing inmates with law enforcement backgrounds initially into protective custody until individualized housing assignments can be made. Plaintiff was initially placed in a holding cell with one other inmate who was receiving medical treatment. Plaintiff's family complained to prison officials by telephone about Plaintiff's living conditions prior to July 10, 2006.

Upon intake into the Jail on June 8, 2006, Plaintiff was given and acknowledged in writing receipt of an inmate handbook. The inmate handbook references an inmate's right "to be advised of grievance procedures." Ex. C to Reply to Pl.'s Opp'n to Mot. for

4

Summ. J.   The inmate handbook contains no further references to grievance procedures.   The handbook states generally that "if you have any questions regarding the rules you may request information from the correctional deputy on duty.   If you need any of the mentioned forms they will also be provided by the correctional deputies."   Id.   The Jail had a written grievance policy.   It was neither given to Plaintiff nor requested by him.   The grievance policy does not state a time limit in which an incident must be grieved.

Plaintiff was moved into another holding cell with several other inmates in July 2006.   He was assaulted by the other inmates on July 10, 2006.   On July 11, 2006, Plaintiff filled out a "request form," asking that certain inmates be placed on his enemy list.   The Jail complied with that request.   The Jail then began an investigation into the assault.   The Jail prepared a memorandum summarizing its investigation into the incident as of July 12, 2006.   At this time, all other inmates denied the assault.

Also on July 12, 2006, Plaintiff and his mother met with Major Doss and Captain Proctor.   The exact content of the meeting is disputed.   Plaintiff contends that the meeting addressed both the assault and his complaints about living conditions.   Defendants contend that the meeting addressed only the assault and that living conditions were not mentioned.   Defendants do not dispute that

5

Major Doss stated that Plaintiff's complaints would be "looked into" or that the grievance system was not discussed at this meeting.

At the July 12, 2006, meeting, Plaintiff signed a document in which he stated that he wanted the Sheriff's Office to "stop all investigations that are directed at what occurred on the night of July 10, 2006" and that he would not hold Gloucester County responsible for the assault. He further affirmed that he did not want to pursue charges against the assailant or give any statements as to what occurred and that he would not testify against any assailant if charges were brought. Plaintiff claims he signed the document under duress out of fear of reprisals.

Plaintiff contends the Jail conducted a full investigation into the assault. Defendants disagree, contending that Plaintiff directed them to halt the investigation before it was completed.

On August 10, 2006, after he was moved from a holding cell to a general population housing unit, Plaintiff attended an orientation meeting with other inmates. See Aff. of Sgt. Cheslie Smith (Ex. D to Reply to Pl.'s Opp'n to Mot. for Summ. J.). The exact content of the orientation is disputed. Plaintiff admits that the orientation contained a "verbal overview of the [grievance] procedure, which included an explanation of what constitutes a grievance and the types of problems that may be

6

grieved" as claimed by Defendants. He denies ever being advised of the **specific** procedures to be followed or how to obtain grievance forms, and the Defendants have provided no evidence that he did receive specific details. After attending the orientation, Plaintiff signed a form stating that he had been "advised that this facility has an official grievance procedure, which is explained in the inmate handbook." Ex. B to Reply to Pl.'s Opp'n to Mot. for Summ. J.

Plaintiff never filed any grievance related to the assault, living conditions, or inadequate medical treatment. No evidence indicated that Plaintiff filed any grievance on any topic while at the Jail. Plaintiff never requested grievance forms or asked any official how to grieve. Plaintiff was never affirmatively denied information or forms.

### III.  Issues

Defendants' Motion for Summary Judgment is based solely upon one argument: Plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies. Plaintiff concedes that he did not do so. Plaintiff argues, however, that his failure to exhaust administrative remedies should be excused. First, he contends that the remedies were not "available" to him because he was never specifically advised about the grievance system. He does not allege that Defendants took any affirmative actions to thwart

7

his filing a grievance or complaint or that they misinformed him about the process. He argues only that his lack of awareness "prevented" him from utilizing the system. Second, he argues that his oral complaints to, and meetings with, prison officials substitute for compliance with the administrative grievance procedure because prison officials conducted an investigation and took resulting actions. Because prison officials investigated and rectified the situation about which he complained, Plaintiff contends the Jail "waived" the requirement that he grieve.

## IV. Analysis

Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996. It provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must comply with the exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or the relief sought. Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Sallee v. Joyner, 40 F. Supp. 2d 766 (E.D. Va. 1999) (describing the rationale for, and the benefits of, grievance procedures). The PLRA was intended to "reduce the quantity and improve the quality of prisoner suits . . . ." Porter, 534 U.S. at

8

524.  Requiring inmates to file administrative grievances gives facilities a chance to correct their own errors, facilitates judicial review by letting courts have the benefit of the prison's expertise in addressing prison complaints, and promotes judicial economy by compiling the factual record.  See Woodford v. Ngo, 548 U.S. 81, 89 (2006).  Exhaustion is **mandatory**, and courts lack discretion to waive the exhaustion requirement.  Porter, 534 U.S. at 524.

Most reported cases excusing compliance with a grievance system consider situations where an inmate was prevented from grieving by affirmative action.  See, e.g., Brown v. Croak, 312 F.3d 109 (3d Cir. 2002) (inmate told he could not file a grievance until investigation completed); Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000) (inmate told he could not file a grievance because he was restricted from doing so); Born v. Monmouth County Corr. Inst., No. 07-3771, 2008 WL 4056313 (D.N.J. Aug. 28, 2008) (inmate misled about proper procedure).  In this case, Plaintiff complains not about an affirmative act preventing his utilization of the system, but about the Jail's failure to act in specifically advising him fully about the system.

A.    Awareness of Grievance System

Here, Plaintiff claims that because the Jail failed to advise him fully about the system, his lack of knowledge excuses his

compliance. Plaintiff bases his argument on the PLRA's terms. The PLRA requires exhaustion of those administrative remedies "as are **available**." 42 U.S.C. § 1997e(a) (emphasis added). Without question, the Jail had a grievance system that was capable of being used, and thus it was available for usage in that sense. Plaintiff asserts, however, that availability should be assessed on an individualized basis, or, in other words, that the system is available only if it has been demonstrated to be available **to him** particularly. He contends that the Jail needed to advise him of the **specific** procedures to be followed and where to get forms. Because the Jail has not established that he was so advised, he claims the system was "unavailable" to him.

The Supreme Court has issued three major opinions strictly applying the PLRA's exhaustion requirement and eliminating exceptions to the exhaustion requirement that lower courts had recognized. First, in <u>Booth v. Churner</u>, 532 U.S. 731 (2001), the Court held that exhaustion was required, regardless of whether the system was simple, fast, or effective. Thus, even if the grievance system could not provide the relief sought by the prisoner, he or she must still utilize it. In <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Court next held that the exhaustion requirement applied to all types of claims arising out of the prison context, no matter the nature of the claim or the type of relief sought. In <u>Woodford</u>

10

v. Ngo, 548 U.S. 81 (2006), the Court stated that exhaustion was mandatory for all cases and could not be excused in the discretion of the district court.   The Court held that, in order to comply with the exhaustion requirement, grievances must be properly and timely filed, appealed to the highest level, and in full compliance with all procedural requirements.  Id.  Thus, the Supreme Court has consistently ruled in favor of uniform application of the PLRA and strict compliance with its exhaustion requirement.

Plaintiff heavily relies upon the Third Circuit case of Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000) (holding that exhaustion established when inmate's allegations were fully examined on the merits by the ultimate administrative authority).   The Supreme Court cases cited and reviewed above post-date Camp.  Further, the Fourth Circuit has never cited the Camp decision or relied upon its reasoning.  The Fourth Circuit has, however, noted when considering different facts and a different issue, that "an administrative remedy is not considered to have been available if a prisoner, **through no fault of his own, was prevented** from availing himself of it."   Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (emphasis added).

Here, the court recognizes that the process at the Jail by which prisoners were advised of the grievance system was not flawless, and the court has assumed, for purposes of this summary

11

judgment motion, that Plaintiff was not advised of every specific facet of the grievance system. But the court cannot conclude based upon the undisputed facts that Plaintiff was affirmatively prevented from utilizing the system or that he was wholly without any responsibility for his failure to grieve.

Plaintiff was a former correctional officer, during which time he presumably would have become aware of the importance of grievance procedures. The evidence in the case shows that Plaintiff undisputably had knowledge of the **existence** of a grievance system at the Jail, and he had clearly been advised that he could ask questions about procedures and request any needed forms. But, he did not do so. Further, Plaintiff could have grieved any incidents after he received the inmate orientation, when he undisputably was given at least a "verbal overview" of the procedure.[2] No evidence gives rise to any inference that the Jail's failure to advise Plaintiff about any aspects of the grievance system was intentional or directed to the Plaintiff. Cf. Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants

---

[2]The court rejects Plaintiff's contention that the PLRA's reference to "available" remedies means "immediately available." Although some courts have cited such definitions, no court has held that exhaustion was excused because the remedy was not "immediately" accessible. For example, in Camp, 219 F.3d 279, the inmate's grievance was not filed until after he had left the prison at which the incident occurred.

12

have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances."). Accordingly, the court cannot conclude that the grievance system was unavailable to Plaintiff on the facts of this case. Plaintiff was advised of and knew about the existence of the system, and he could have asked for any further information he required.

In light of Supreme Court precedent, this court will not recognize the broad-based exception which would be required by the case at bar. The Supreme Court clearly stated, "we stress the point . . .that we will not read futility or *other exceptions* into [the PLRA's] statutory exhaustion requirements...." <u>Booth</u>, 532 U.S. at 741 n.6 (emphasis added). If exhaustion could be excused when a prisoner claimed a lack of specific knowledge about the grievance process, an "awareness" exception requiring courts to analyze and determine prisoners' knowledge levels of the grievance process at given points in time would be undoubtedly routinely invoked. Irrespective of whether a prisoner's knowledge of the grievance process would be assessed objectively or subjectively, such a time-consuming task is fraught with uncertainty. Accordingly, the court declines to create such a broad exception to the PLRA's bright-line requirement of exhaustion.

13

This court is not alone in so holding.  Although such a rule occasionally may be harsh in its application, as the Eighth Circuit explained, "[s]ection 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him.    The statute's requirements are clear:  If administrative remedies are available, the prisoner must exhaust them."  Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000).  The Third Circuit held that, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)(quoting Beeson v. Fishkill Corr. Ctr., 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

Dealing with a claim like Plaintiff's, the Seventh Circuit found that "[a]   prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance."  Twitty v. McCoskey, No. 06-1675, 2007 WL 737330, 226 Fed. Appx. 594, 596 (7th Cir. Mar. 9, 2007)(unpublished).  Likewise, the Sixth Circuit has rejected an inmate's argument that exhaustion was unavailable to him because he was unaware of the system.    Brock v. Kenton County, No. 02-5442, 2004 WL 603929, 93 Fed. Appx. 793 (6th Cir. Mar. 23, 2004) (unpublished).    The Tenth Circuit ruled similarly.    Gonzales-Liranza v. Naranjo, No. 02-2110, 2003 WL 22255886, 76 Fed. Appx. 270 (10th Cir. Oct. 2, 2003) (unpublished) (rejecting prisoner's

14

claim that he was unaware of procedures and thus could not utilize them).    The Tenth Circuit reasoned: "[t]hus, even accepting plaintiff's allegation that he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement."    Id. at 273. Lacking any authority from the Court of Appeals for the Fourth Circuit authorizing such an exception to the exhaustion requirement, this court holds that a prisoner's claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies.[3]  The court concludes that it must strictly apply the PLRA's provisions and not authorize judicially-created exceptions to the exhaustion requirement.

---

[3]The court is aware of contrary, but non-binding, authority, notably Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007) (excusing failure to grieve, when plaintiff was never advised of grievance system, and reasoning "[t]hat which is unknown and unknowable is unavailable"); Arnold v. Goetz, 245 F. Supp. 2d 527, 537-38 (S.D.N.Y. 2003) (noting that an inmate who is not informed about the procedures cannot avail himself of them); and Hall v. Sheahan, No. 00 C 1649, 2001 WL 111019 at *2 (N.D. Ill. Feb. 2, 2001) ("An institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it."). However, the court further notes that the foregoing cases are not all precisely and factually on point with the case at bar wherein Plaintiff had knowledge of the existence of the grievance system, and no evidence suggests that Defendants frustrated any effort by Plaintiff to learn more about the system.

15

B.    Waiver of Exhaustion Requirement

Plaintiff next asserts that the exhaustion requirement should be waived in this case because the Jail investigated and took actions to rectify his complaints, thereby rendering any grievance moot.  Plaintiff contends that because the Jail had addressed his issues, exhaustion would be only a useless formality.  Such a theory runs afoul of the Supreme Court's directive that futility is not an exception to the exhaustion requirement.    Booth, 532 U.S. at 741 n.6.    Even when the grievance system cannot award the relief sought, either because the system lacks the power to do so or because the problem complained of has already been fixed, an inmate still must comply.  Id.  Thus, even though Plaintiff was satisfied with the relief he was given as a result of his informal complaints, he was required to grieve formally if he wished to later maintain a suit.  Although utilizing the system might not result in any different actions being taken  from the perspective of the inmate, a requirement of administrative exhaustion confers important systemic, if not individual, benefits as described above.

In this case, if Plaintiff had utilized the grievance system, he would have been required to describe what occurred and state his recollections, and a more contemporaneous record of the facts established.    Here, Plaintiff did complain verbally, but he elected, at the time, not to press his claims and not to create a

16

written record of them.[4]  As a result, recollections have surely
faded, and evidence-gathering would certainly be hindered.

Relatedly, Plaintiff contends that his verbal complaints, the
verbal complaints of his family,[5] request forms completed by him
related to his living conditions that he contends were not
accepted, and his meeting with prison officials are the functional
equivalent of grieving.  The court is not certain based upon the
established facts that the officials who met with Plaintiff were
the same officials who would have considered Plaintiff's grievance
or any appeals therefrom. But even assuming this to be the case,
the policy reasons for strict adherence to the grievance system
support no exceptions for "equivalency," and neither the Supreme
Court nor the Fourth Circuit has recognized such an exception.

### III.    Conclusion

Because it is undisputed that Plaintiff did not exhaust his
administrative remedies, Defendants are entitled to summary
judgment, and the court **GRANTS** Defendants' Motion for Summary

---

[4]The court can appreciate that an inmate may fear that
complaining about past abuse might make future abuse more likely.
But the PLRA puts this choice, which admittedly may be a tough
choice under certain facts, to inmates.  An inmate cannot be silent
about an incident at the time, and then base a suit upon it later.

[5]The court found no case accepting complaints made by third-
parties on behalf of a prisoner as sufficient to comply with the
PLRA's exhaustion requirement.

17

Judgment.    The Clerk shall enter judgment in favor of the
Defendants.

On March 2, 2009, Plaintiff filed a Motion for Sanctions,
arguing that Defendants' Motion for Summary Judgment lacked a good
faith basis.   Given the court's ruling on the Motion for Summary
Judgment, Plaintiff's Motion for Sanctions is **DENIED**.   Plaintiff
also filed a Motion to Strike the Memorandum submitted by
Defendants in support of their Motion for Summary Judgment.
Plaintiff argued that the memorandum should be stricken because
Defendants failed to itemize undisputed facts, as required by Local
Rule 56. Defendants' post-hearing brief rectified this deficiency.
Moreover, Plaintiff responded fully to Defendants' post-hearing
brief and the facts asserted therein.    Therefore, Plaintiff's
Motion to Strike is **MOOTED** and **DENIED**.

Plaintiff is advised that he may appeal from this Opinion and
Final Order by forwarding a written notice of appeal to the Clerk
of the United States District Court, United States Courthouse, 600
Granby Street, Norfolk, Virginia 23510.    Said written notice must
be received by the Clerk within thirty (30) days from the date of
this Opinion and Final Order.   If Plaintiff wishes to proceed *in
forma pauperis* on appeal, the application to proceed *in forma
pauperis* is to be submitted to the Clerk, United States Court of

18

Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

/s/

Rebecca Beach Smith
United States District Judge

Norfolk, Virginia
November 4 , 2009

19